IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ANNE H. ZIMMERMAN,                                                No. 6:15-cv-01090-HZ

            Plaintiff,                                                OPINION & ORDER

    v.

COMMISSIONER SOCIAL
SECURITY ADMINISTRATION,

            Defendant.

Drew L. Johnson
Sherwood J. Reese
Drew L. Johnson, P.C.
1700 Valley River Drive
Eugene, OR 97405

        Attorneys for Plaintiff

Janice E. Hebert
Assistant United States Attorney
U.S. Attorney's Office, District of Oregon
1000 SW Third Avenue, Suite 600
Portland, OR 97204

1 - OPINION & ORDER

Gerald Hill
Social Security Administration
Office of the General Counsel
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, WA 98104

      Attorneys for Defendant

HERNÁNDEZ, District Judge:

      Plaintiff Anne Zimmerman brings this action for judicial review of the Commissioner's final decision denying her application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. This Court has jurisdiction under 42 U.S.C. § 405(g) (incorporated by 42 U.S.C. § 1382(c) (3)). For the reasons that follow, the Commissioner's decision is affirmed.

## PROCEDURAL BACKGROUND

      Plaintiff applied for DIB on March 1, 2012, alleging an onset date of May 1, 2008, which she later amended to April 22, 2010. Tr. 39, 138.[1] Her application was denied initially and on reconsideration. Tr. 95, 103. On November 13, 2013, Plaintiff appeared, with counsel, for a hearing before an Administrative Law Judge (ALJ). Tr. 34-72. On December 5, 2013, the ALJ found Plaintiff not disabled. Tr. 8. The Appeals Council denied review. Tr. 1.

## FACTUAL BACKGROUND

      Plaintiff alleges disability based on brain injury, concussive syndrome, major depression, cognitive impairment, osteoporosis, diabetes, and left leg plated fracture. Tr. 160. She testified that her mental health conditions were the biggest impediment to her ability to work. Tr. 47-48, 59-60, 70.

---

[1] Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative record, filed herein as Docket No. 8.

2 - OPINION & ORDER

Plaintiff was sixty-four years old at the time of the administrative hearing. Tr. 43. She graduated from high school and completed four or more years of college. Tr. 161. She has past work experience as a consultant, mental health specialist, and resource specialist. Id.

## SEQUENTIAL DISABILITY ANALYSIS

A claimant is disabled if unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). Disability claims are evaluated according to a five-step procedure. See, e.g., Valentine v. Comm'r, 574 F.3d 685, 689 (9th Cir. 2009). The claimant bears the ultimate burden of proving disability. Id.

In the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." Yuckert, 482 U.S. 137 at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled.

In step three, the Commissioner determines whether the impairment meets or equals "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." Yuckert, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. Yuckert, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity to perform "past relevant work." 20 C.F.R. §§

404.1520(e), 416.920(e). If the claimant can, the claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to the Commissioner. In step five, the Commissioner must establish that the claimant can perform other work. Yuckert, 482 U.S. at 141-42; 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets his burden and proves that the claimant is able to perform other work which exists in the national economy, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. Tr. 13. Next, at steps two and three, the ALJ determined that Plaintiff has the following severe impairments: major depression and generalized anxiety disorder secondary to post-concussion syndrome. Id. However, the ALJ determined that Plaintiff's impairments did not meet or medically equal the severity of a listed impairment. Tr. 14. At step four, the ALJ concluded that Plaintiff has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: she can have no more than occasional interaction with coworkers and the general public. Tr. 15. The ALJ determined that Plaintiff had no past relevant work. Tr. 20. However, at step five, the ALJ determined that Plaintiff is able to perform jobs that exist in significant numbers in the economy, such as hand packager, warehouse worker, and cleaner. Tr. 21. Thus, the ALJ determined that Plaintiff is not disabled. Tr. 22.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1193 (9th

Cir. 2004). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id.

The court must weigh the evidence that supports and detracts from the ALJ's conclusion. Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007) (citing Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998)). The reviewing court may not substitute its judgment for that of the Commissioner. Id. (citing Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)); see also Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading. Id.; see also Batson, 359 F.3d at 1193. However, the court cannot not rely upon reasoning the ALJ did not assert in affirming the ALJ's findings. Bray, 554 F.3d at 1225-26 (citing SEC v. Chenery Corp., 332 U.S. 194, 196 (1947)).

## DISCUSSION

Plaintiff contends that the ALJ erred by: (1) giving "little weight" to the opinions of Dr. Lafrance and Mr. Barnes; (2) finding that Plaintiff did not meet Listing 12.04; and (3) failing to consider all limitations supported by the record when forming the residual functional capacity.

**I.     Medical Opinions**

a)  Dr. Lafrance

Dr. Lafrance has been Plaintiff's treating physician for over two decades. Tr. 721. During most of that time, Dr. Lafrance's treatment focused on Plaintiff's migraines and leg injury. Id. In May 2008, Plaintiff was involved in a motor vehicle accident. Id. Dr. Lafrance evaluated her in

July of 2008 and has followed her intermittently regarding the consequences of that injury as well as her pre-existing problems. Id.

In July of 2008, Dr. Lafrance noted that Plaintiff had a series of cognitive problems. Tr. 33. The following month, Plaintiff reported to Dr. Lafrance "a definite improvement" in the previously reported cognitive problems, such as word-finding distress, multitasking loss, and general cognitive decline. Tr. 424. However, by December of 2008, Plaintiff reported having continued problems with cognition. Tr. 419. Plaintiff had problems with short-term memory and attention span, and Dr. Lafrance noted a lot of repetitive questioning, repetitive thinking, and disorganization. Id.

In March of 2009, Dr. Lafrance noted that Plaintiff had "mild cognitive impairment secondary to head injury." Tr. 412. In May of 2009, a year after the accident, Dr. Lafrance noted an overall sense of improved cognitive function, although Plaintiff reported that she was still not back to pre-accident levels. Tr. 406. In September of 2009, Dr. Lafrance wrote that Plaintiff had "ongoing cognitive and particularly executive function problems." Tr. 403. In November of 2009, Plaintiff reported "definite improvement in her cognitive focus since being placed on the Exelon patch." Tr. 396. However, in January of 2010, Dr. Lafrance noted that such improvement was gradual and slow, and that Plaintiff continued to have problems with memory and executive cognitive skills. Tr. 393-94.

On April 22, 2010, the alleged onset date, Plaintiff reported to Dr. Lafrance that she had "plateaued in her functional state." Tr. 388. Plaintiff had to reduce her hours of work due to multiple cognitive issues. Id. Dr. Lafrance's notes were similar in June of 2010 and September of 2010. Tr. 379-81, 385-87.

In October of 2010, Dr. Lafrance noted that Plaintiff had been doing well since she was last seen and that her cognitive focus and endurance had improved. Tr. 373. However, Dr. Lafrance also noted that Plaintiff's cognitive difficulties continued to interfere with her work and her life. Tr. 374. In January of 2011, Dr. Lafrance met with Plaintiff and noted that she was planning for retirement and had a variety of volunteer and educational activities planned. Tr. 363. Plaintiff's cognitive focus and endurance had continued to improve. Id. Dr. Lafrance's notes in June and October of 2011 reflect similar improvement, although Plaintiff experienced some "daily up and down," Tr. 356, and did not participate in all of the activities she had discussed, Tr. 349. Dr. Lafrance wrote that Plaintiff "is doing quite well with her current status." Tr. 357.

In May of 2012, Dr. Lafrance noted that Plaintiff experienced cognitive and behavioral changes related to her head injury and that she had made no progress since she was last seen. Id. However, he also repeated that she was doing "quite well." Tr. 713.

In July of 2012, Dr. Lafrance stated that Plaintiff's issues had "become increasingly severe" and that Plaintiff was unable to be employed because of her severe anxiety and fear of crowds of people. Tr. 707-09. As an example of Plaintiff's ongoing cognitive issues, Dr. Lafrance noted that Plaintiff would "forget[] things going room to room." Id.

Dr. Lafrance's notes from October of 2012 and January of 2013 state that Plaintiff's cognitive and behavioral issues have not improved over time, even though such issues "are not well documented on comprehensive neuropsychological testing." Tr. 698, 702. Dr. Lafrance stated that "major depressive disorder is evident." Id. Dr. Lafrance opined that her inability to work had begun when she had an injury to her leg and had worsened as a result of the head injury caused by the motor vehicle accident. Tr. 698, 704. According to Dr. Lafrance, Plaintiff

was "certainly" prohibited from full-time work. Tr. 700, 704. Dr. Lafrance repeated his observations in his chart notes from April and August of 2013. Tr. 690-94.

In November of 2013, Dr. Lafrance wrote a letter regarding his observations and opinions about Plaintiff's health and ability to work. Tr. 721. In the letter, Dr. Lafrance stated that Plaintiff "unquestionably suffered a traumatic brain injury." Tr. 721. While neuropsychological testing did not reveal Plaintiff's functioning as significantly impaired, Dr. Lafrance's evaluations over time showed that Plaintiff's brain was not functioning as it had been before the motor vehicle accident. Id. Specifically, Dr. Lafrance wrote:

> [Plaintiff] has no longer the ability to deal with frustrating circumstances. She is easily confused and overwhelmed when presented with choices. She remains depressed and withdrawn. A previously gregarious individual has become agoraphobic and avoids contact with others. She prefers to go out and live in cabin in the desol[a]te deep woods only with her dogs and avoid company of other people. She has at times been very severely depressed. She is on medication but only incompletely responds to medication. She does receive regular counseling.
>
> This has been a problem for over 5 years with only minimal improvement. I believe this is a permanent problem. I do not believe that she would be able to work a normal 8 hour day on a sustained basis. I am certain that she would miss hours on a daily basis, and many days per month because of her inability to interact with individuals and cope with higher level dysfunction. Her previous job is something she cannot do at all. Any job that would require interaction with a supervisor or require consistent output is beyond the scope of her function.

Tr. 721-22. Dr. Lafrance explained that neuropsychological testing may not document some significant problems that remain present for Plaintiff and impair normal functioning. Tr. 722.

Social security law recognizes three types of physicians: (1) treating, (2) examining, and (3) nonexamining. Holohan v. Massanari, 246 F.3d 1195, 1201-02 (9th Cir. 2001); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). Generally, more weight is given to the opinion of a treating physician than to the opinion of those who do not actually treat the claimant. Id.; 20 C.F.R. §§ 1527(c)(1)-(2), 416.927(c)(1)-(2).

If the treating physician's medical opinion is supported by medically acceptable diagnostic techniques and is not inconsistent with other substantial evidence in the record, the treating physician's opinion is given controlling weight. Orn v. Astrue, 495 F.3d 625, 631 (9th Cir. 2007); Holohan, 246 F.3d at 1202. If a treating physician's opinion is not given "controlling weight" because it is not "well-supported" or because it is inconsistent with other substantial evidence in the record, the ALJ must still articulate the relevant weight to be given to the opinion under the factors provided for in 20 C.F.R. §§ 1527(d)(2), 416.927(d)(2). Orn, 495 F.3d at 631. "To reject an uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence. If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005) (citation omitted).

In his opinion, the ALJ gave little weight to Dr. Lafrance's opinion. Tr. 20. First, he found that Dr. Lafrance's opinion was inconsistent with test results, treatment records, and Plaintiff's reported daily activities. Id. The ALJ also found that Dr. Lafrance's notes reflected an "excessive reliance" on Plaintiff's self-assessment, rather than an objective opinion. Id. Plaintiff argues that the ALJ erred in rejecting Dr. Lafrance's opinion because, contrary to the ALJ's finding, the record shows that there was no conflict between neuropsychological testing results, treatment records, and Dr. Lafrance's conclusions.

Julian Guillaumot, Ph.D. conducted testing of Plaintiff in 2009, before the amended alleged onset date of disability, and again in August 2012, approximately two years after the alleged onset date. He also treated Plaintiff from 2008 to 2013. Tr. 528, 651. Dr. Guillaumot concluded in 2012 that Plaintiff had cognitive difficulties, but he noted significant improvement

from 2009 in Plaintiff's delayed visual memory, general memory, and working memory, as well as in executive functions. Tr. 618. Dr. Guillaumot opined that such improvements might be attributed to Plaintiff's use of Ritalin. Id. He also noted that Plaintiff continued to struggle with "marked general anxiety, social anxiety, as well as mood elements and they are most likely the main drivers of subjective impairments in cognitive function at this time." Id.

Based on the test results, Dr. Guillaumot made several recommendations, such as engaging in physical exercise and intellectual challenges, taking vitamins and supplements, regulating sleep and diet patterns, and remaining socially active. Tr. 618-20. He diagnosed Plaintiff with major depressive disorder, generalized anxiety disorder with occasional associated panic elements, and social phobia. Tr. 620. He did not note any limitations in terms of skill or sustained attention.

When Dr. Guillaumot met with Plaintiff to review the test results, he contrasted the 2012 results with the 2009 results and "highlighted her global mild-moderate improvements and [the] need to focus on depression and anxiety rather than get stuck in cognitive sequelae that are essentially in near-complete remission." Tr. 643. In October of 2012, Dr. Guillaumot noted that Plaintiff was trying to obtain disability benefits, which he opined she did not need because she is not cognitively impaired. Tr. 647.

A careful review of Dr. Guillaumot's test results and treatment notes show that there is generally no conflict between his notes and observations and those of Dr. Lafrance. As the ALJ notes, both doctors agree that Plaintiff suffers from depressive and anxiety disorders. Tr. 14. They both note that Plaintiff is isolated and that she gets exhausted by social interactions. Tr. 610, 722. And they both note that Plaintiff's social anxieties and phobias are her primary limitations. Tr. 605, 722.

However, the doctors' opinions differ in some ways. Dr. Lafrance readily admits that neuropsychological testing does not indicate that Plaintiff is significantly impaired; instead, he opines that Plaintiff is unable to work because she cannot interact with individuals (including supervisors) and "cope with higher level dysfunction." Tr. 722. In contrast, Dr. Guillaumot expresses worry about Plaintiff obtaining disability benefits, not only because she is not cognitively impaired, but also because it may result in her further retreating into "anxious/socially-avoidant patterns." Tr. 647. Dr. Guillaumot is "not convinced" by Plaintiff's perceptions of her own limitations. Tr. 605. In addition, Dr. Guillaumot's notes do not support Dr. Lafrance's conclusion that Plaintiff is easily confused and overwhelmed when presented with choices. Tr. 722. In sum, the ALJ did not err in concluding that Dr. Lafrance's opinion conflicted with Dr. Guillaumot's test results and opinion.

The Court also agrees with the ALJ that Dr. Lafrance's conclusions are inconsistent with the treatment record. As described above, Dr. Lafrance himself noted that Plaintiff made improvements in cognitive functioning throughout the years he examined her after the motor vehicle accident. His statement in July 2012 that Plaintiff's cognitive and behavioral issues, stemming from the accident, have become "increasingly severe" is not supported his treatment notes as a whole. Furthermore, Dr. Lafrance's assessment of Plaintiff's inability to interact with individuals, including supervisors, is solely based on Plaintiff's subjective testimony, which the ALJ discounts based on a lack of credibility. Plaintiff does not challenge this portion of the ALJ's findings. Tr. 15.

Finally, the ALJ also properly discounted Dr. Lafrance's opinion because it conflicts with Plaintiff's reported daily activities. While Dr. Lafrance found that Plaintiff could not interact with individuals and was confused and overwhelmed when presented with choices, the record is

full of references to Plaintiff's activities of daily living that suggest otherwise. For example, Plaintiff purchased a cabin, joined a choir group, engaged in social activities, bought a car, took guitar lessons, participated in a "dream group" with other women, and attended a birthday party. Tr. 349, 586, 599, 655, 646.

Plaintiff argues that such activities are not inconsistent with Dr. Lafrance's opinion. However, if the evidence is susceptible to more than one rational interpretation and the ALJ's conclusion is supported by substantial evidence, the ALJ must be affirmed. Vasquez v. Astrue, 572 F.3d 586, 591 (9th Cir. 2009) ("The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities. . . . Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed."). Here, while Plaintiff's daily activities could be subject to more than one interpretation, the Court must affirm the ALJ's decision because it is supported by substantial evidence.

    b)  Mr. Barnes

Gary Barnes, LCSW, began treating Plaintiff in December of 2012. Tr. 654. Mr. Barnes had previously treated Plaintiff in 2000-2001 regarding grief issues and in 2004-2005 regarding job stress. Tr. 669-88.Mr. Barnes initially found that Plaintiff did "not present herself as being as impaired as she reports feeling." Tr. 655. He wrote that Plaintiff's social isolation had "recently improved." Tr. 655. He did however note that Plaintiff had recurrent major depression and "social anxiety by her report." Tr. 655. In his next session with Plaintiff, Mr. Barnes wrote that "[s]he pathologizes herself a great deal." Tr. 656.

Mr. Barnes' notes throughout January and February of 2013 reflect that Plaintiff was under a great deal of stress because she attempted to buy a new house. Tr. 656-58. Mr. Barnes observed that Plaintiff was very emotional, negative, and anxious. Id. On February 29, 2013,

Plaintiff seemed "somewhat improved" from her prior appointment, although social isolation was a concern. Tr. 658. In March and April of 2013, Mr. Barnes at times noted that Plaintiff was not depressed, although she was anxious and worried, and other times stated that she seemed depressed. Tr. 659-60. Her condition appeared to be heavily influenced by the status of her relationship with her husband, with whom she was in the midst of divorcing. In July of 2013, Mr. Barnes noted that Plaintiff had been at her cabin for five days and, while there, got very depressed which "was unusual." Tr. 663. Mr. Barnes noted that the upcoming social security hearing was making Plaintiff anxious and that she demonstrated "some memory deficits and disorganization." Id. In the August 13, 2013 session, Mr. Barnes noted that Plaintiff was depressed and socially isolated. Tr. 654. A week later her depression was better, although her anxiety was worse. Id.

Mr. Barnes noted in September of 2013 that "[i]t is hard to sort out how much her depression and anxiety today is related to feeling rejected by [her husband], and how much is related to traumatic memory regarding her disability." Tr. 655. A week later, Mr. Barnes noted that her depression was increased and that she is not resilient around life stresses. Id. And, a week after that, Mr. Barnes wrote that Plaintiff's "depression score [on the Burns Depression inventory] is alarming. However, her mood is clearly improved today, and her scores may reflect her tendency to exaggerate her symptoms." Tr. 666. By October 2013, Mr. Barnes noted that Plaintiff's depression was "resolving" and her mood was "greatly improved." Tr. 667-68.

In September of 2013, Mr. Barnes completed a mental residual functional capacity (RFC) assessment of Plaintiff. Tr. 625. He found that she had "moderately severe" impairments in the following areas:

- the ability to understand and remember detailed instructions,

- the ability to carry out detailed instructions,
- the ability to maintain attention and concentration for extended periods,
- the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances,
- the ability to work in coordination with or proximity to others without being distracted by them,
- the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods,
- the ability to interact with the general public,
- the ability to respond appropriately to changes in the work setting,
- the ability to travel in unfamiliar places or use public transportation, and
- the ability to set realistic goals or make plans independently of others.

Tr. 625-28.

The ALJ gave Mr. Barnes' assessment little weight for two reasons: (1) Mr. Barnes' assertions concerning limitations in understanding, remembering, and carrying out detailed instructions were not supported by Dr. Guillaumot's test results, and (2) Mr. Barnes' own observations regarding Plaintiff's exaggeration of symptoms or degree of symptoms reflected negatively on Plaintiff's credibility and, in turn, on the limitations assessed based on self-reporting. Id.

Under regulations governing the weight to be accorded to medical opinions, "acceptable medical sources" include licensed physicians and licensed psychologists, but not licensed clinical social workers. 20 C.F.R. § 404.1513(a), (d)(1). Social workers are deemed to be "other sources." Id.; see also Wake v. Comm'r of Soc. Sec., 461 F. App'x 608, 610 (9th Cir. 2011). Under Ninth Circuit law, evidence from "other sources" is considered under the same standard as that used to evaluate lay witness testimony, meaning the ALJ may reject it for reasons germane to the witness. Wake, 461 F. App'x at 610 (because social worker was not an acceptable medical source, ALJ could disregard social worker's opinion for germane reasons).

Medical sources who are not "acceptable medical sources" may not establish the existence of a medically determinable impairment, but, "information from such 'other sources' may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." Titles II & Xvi: II & Xvi: Considering Opinions & Other Evidence from Sources Who Are Not "Acceptable Med. Sources" in Disability Claims; Considering Decisions on Disability by Other Governmental & Nongovernment, SSR 06-03P at *2 (S.S.A. Aug. 9, 2006). Factors for consideration of such other medical source opinions include: (1) how long the source has known and how frequently the source has seen the individual; (2) how consistent the opinion is with other evidence; (3) the degree to which the source presents relevant evidence to support an opinion; (4) how well the source explains the opinion; (5) whether the source has a specialty or area of expertise related to the individual's impairment(s); and (6) any other factors that tend to support or refute the opinion. Id. at *4–5.

The ALJ disregarded Mr. Barnes' RFC assessment because Mr. Barnes' assertions concerning limitations in understanding, remembering, and carrying out detailed instructions were not supported by Dr. Guillaumot's test results. Plaintiff does not dispute this reason, which is a germane reason, for discounting Mr. Barnes' assessment.[2] See, e.g., Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012) (holding that the ALJ did not err in discounting a physician's assistant's opinion where it conflicted with a psychiatrist's evaluation.). Therefore, the ALJ did not err in discounting Mr. Barnes for this reason.

---

[2] Instead of refuting the ALJ's finding that Mr. Barnes' assertion is unsupported by Dr. Guillaumot's test results, Plaintiff writes that "she concedes that any error concerning her ability to handle detailed instructions would be harmless and not affect the outcome of the determination." Pl. Br. 15.

The ALJ also properly discounted Mr. Barnes' assessment to the extent it included limitations based solely on Plaintiff's self-reports, which the ALJ (and Mr. Barnes himself) found not credible. Because the ALJ found Plaintiff not entirely credible, and Plaintiff does not challenge this finding, Mr. Barnes' reliance on Plaintiff's self-reports is a germane reason to discount his assessment.

## II.    Listing 12.04

Plaintiff argues that the ALJ erred in finding that Plaintiff's mental impairments do not meet the Listing 12.04 (affective disorders) requirements of 20 C.F.R. Part 404, Subpart P, Appendix 1.

The required level of severity for affective disorders can be met in several ways. One way is for a claimant to show "medically documented persistence, either continuous or intermittent" of at least four medical findings under §12.04(A) and two impairment-related functional limitations under §12.04(B).

Plaintiff argues that she meets the Listing 12.04 requirements because she has a medically documented persistence of the following four medical findings under §12.04(A): sleep disturbance, decreased energy, difficulty concentrating or thinking, and thoughts of suicide; and two of the findings from §12.04(B): marked difficulties in maintaining social functioning and marked difficulties in maintaining concentration, persistence, or pace.

Plaintiff's argument fails because substantial evidence supports the ALJ's conclusion that Plaintiff does not demonstrate the two §12.04(B) findings. The ALJ found that Plaintiff did not have marked difficulties in maintaining social functioning, because she demonstrated

intermittent engagement in social activities.³ Tr. 15. In addition, the ALJ found that Plaintiff did not have marked difficulties with concentration, persistence, or pace based on Dr. Guillaumot's test results and the record as a whole.

In support of her argument, Plaintiff points to the records and opinions of her three mental-health care-providers, Dr. Lafrance, Mr. Barnes, and Dr. Guillaumot. However, as discussed above, the ALJ properly discounted the opinions of Dr. Lafrance and Mr. Barnes. Even assuming that Dr. Guillaumot's findings did support a conclusion that Plaintiff had marked difficulties in maintaining social functioning, his test results and opinion do not support any difficulty with concentration, persistence, or pace. In other words, Plaintiff fails to show that she has <u>two</u> impairment-related functional limitations, as required under §12.04(B).

### III.    Residual Functional Capacity

Plaintiff argues that the ALJ failed to consider all of her limitations in her RFC. However, the only additional limitations Plaintiff contends should have been included are derived from the opinions of Dr. Lafrance and Mr. Barnes, whose opinions the ALJ properly assigned little weight. The Court finds no error.

///

///

---

[3] The ALJ also noted that Plaintiff testified about her limitations in social functioning after testifying about confusion and poor memory. Tr. 14-15. The Court agrees with Plaintiff that this is not a valid reason to conclude that Plaintiff does not have marked limitations in maintaining social functioning. However, any error was harmless because the ALJ provided another valid reason to discount Plaintiff's allegations of limitations. <u>Stout v. Comm'r, Soc. Sec. Admin.</u>, 454 F.3d 1050, 1055 (9th Cir. 2006) (finding errors that are "nonprejudicial to the claimant or irrelevant to the ALJ's ultimate disability conclusion" harmless).

**CONCLUSION**

Based on the foregoing, the Commissioner's decision is affirmed.

IT IS SO ORDERED.

Dated this \_\_\_13\_\_\_ day of \_\_\_APRIL_____, 2016

_____
MARCO A. HERNÁNDEZ
United States District Judge

18 - OPINION & ORDER